IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OBIE E. IGBOKWE, RICHARD BARGE, | § | |
| JIMMY HARRIS, GWEN JENKINS, | § | |
| LEBRUCE THOMAS, and | § | |
| SHIRLEY GRAY, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. **3:11-CV-3036-L** |
| | § | |
| DALLAS COUNTY SCHOOLS and | § | |
| RICK SORRELLS, in his Individual and | § | |
| Official Capacity, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND OPINION

Before the court are Defendants' Motion to Dismiss Plaintiffs' Original Petition and, In The

Alternative, Motion for a More Definite Statement [Doc. # 6], filed November 10, 2011; Plaintiffs'

Brief in Support of Preliminary Injunction and Response to Defendants' Motion to Dismiss [Doc.

# 9], filed November 30, 2011, which the court treats as a motion; Defendants' Motion to Strike

Plaintiff Obi E. Igbokwe's Response to Defendants' Motion to Dismiss on Behalf of Plaintiffs [Doc.

# 12], filed December 13, 2011; and Plaintiffs' Additional Motion for Injunctive Relief and Denial

of Qualified Immunity for Rick Sorrells [Doc. # 24], filed December 23, 2011.  After careful

consideration of the motions, responses, briefs, replies, record, and applicable law, the court **grants**

Defendants' Motion to Dismiss Plaintiffs' Original Petition; **grants** Defendants' Motion to Strike

Plaintiff Obi E. Igbokwe's Response to Defendants' Motion to Dismiss on Behalf of Plaintiffs;

**denies as moot** Defendants' Alternative Motion for a More Definite Statement; **denies** Plaintiffs'

Motion for Injunctive Relief; and **denies** Plaintiffs' Additional Motion for Injunctive Relief and Denial of Qualified Immunity for Rick Sorrells.

## I.      Background

Obi E. Igbokwe, Richard Barge, Jimmy Harris, Gwen Jenkins, LeBruce Thomas, Belen Hernandez, Octavio Velasquez, Barbara Weich, Gail Medlock, and Shirley Gray (collectively "Plaintiffs")[*] filed this action in the 44th District Court of Dallas County, Texas on October 10, 2011, against Dallas County Schools ("DCS") and Rick Sorrells ("Sorrells") (collectively, "Defendants").  Defendants removed this action to federal court on November 4, 2011.  Plaintiffs sue for alleged violations of federal fair labor laws and federal civil rights.

Defendants, relying on Plaintiffs' pleadings, have set forth the factual allegations in their motion to dismiss.  Given the excellent summation by Defendants, the court will not attempt to improve on what Defendants have summarized.  The court adopts the factual allegations as set forth by Defendants, except for the references to footnotes and citations.  The factual allegations are as follows:

> Plaintiffs are bus drivers employed by DCS.  The nature of driving a bus route requires Plaintiffs to work split shifts.  Plaintiffs assert that they work from around 5:30 am until 9:30 am and return around 2:00 pm for the afternoon shift, which runs until somewhere between 5:00 pm to 6:00 pm, depending on the driver's schedule.  At the beginning of the 2010-2011 school year, Plaintiffs bid on routes out of the Don Shield Service Center.  After bidding on the Don Shield Service Center routes, Plaintiffs allege that they were informed that the routes would be transferred to the North Dallas Service Center.  Plaintiffs made requests to remain at the Don Shield Service Center, but their requests were denied.

---

[*] Hernandez, Velasquez, Weich, and Medlock have been dismissed with prejudice as Plaintiffs in this action.

Plaintiffs assert that they were upset about their transfer to the North Dallas Service Center because of its location fifteen miles [farther] from the Don Shields Service Center.  Plaintiffs allege that the transfer caused an economic hardship and that it also affected their overall quality of life because they spent an additional two hours traveling to and from work and, as such, had to wake up earlier in the morning.   Because of the hardship the transfer allegedly would inflict, Plaintiffs took their concerns to DCS and Sorrells.

After Plaintiffs were transferred to the North Dallas Service Center, DCS provided Plaintiffs with a shuttle that transported them from the Don Shield Service Center to the North Dallas Service Center.  Plaintiffs believed that they should get paid in transit from the Don Shield Service Center to the North Dallas Service Center. DCS provided the shuttle until June 2, 2011.  Plaintiffs were notified that the shuttle would be discontinued and was being offered as a courtesy.  After June 2, 2011, if an employee did not want to provide his own transportation to the North Dallas Service Center, he would need to transfer to another service center pursuant to DCS's Transfer Procedures.  While the shuttle was in service, Plaintiffs were offered the opportunity to drive the shuttle for $7.25.  Plaintiffs assert that previous shuttle drivers drove the shuttle at their regular pay rate.

Prior to the route bidding process for 2011-2012, Plaintiffs allege that DCS announced that there would be a freeze on all transfers.   Plaintiffs assert that they were the only employees requesting transfers and they were not allowed to transfer back to the Don Shield Service Center.  Conversely, Plaintiffs allege that several other employees have requested and received transfers from one service center to another.  The hiring freeze was announced at the employee convocation on August 16, 2011.  While at the employee convention, Plaintiffs assert that they were offended by a guest speaker's allegedly insensitive and sexually charged jokes.

Plaintiffs also assert that DCS has an "endemic culture of wastefulness and misplaced priorities."  DCS allegedly replaced the "good working a/c units with brand new units in all [DCS] properties; but didn't see a need to repair the a/c units in the Special Education buses."  While safety is the number one goal at DCS, Plaintiffs assert that DCS spends money on useless equipment instead of investing resources to help minimize the stress and fatigue level of their drivers.  Plaintiffs further assert that DCS goes "out of [its] way to intensify the stress and fatigue level of their work force."

> Aside from taking their concern regarding their transfer to Sorrells, none of Plaintiffs' factual allegations assert[s] that Sorrells was involved in the route bidding process or that Sorrells made or was involved in the initial decision to transfer Plaintiffs. According to Plaintiffs, Sorrells asserted that DCS has the right to transfer employees and informed Plaintiffs that he would "make some investigations and consultations" regarding their concerns. There are no allegations that Sorrells was involved in any decisions regarding the shuttle other than extending it at Plaintiffs' request.

Defs.' Br. in Support of Mot. to Dismiss 104 (footnotes and citation references omitted).

## II.     Standards

### A.     Rule 12(b)(6) - Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer

more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355

F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

### B.    Rule 8(a) - Pleading Requirements

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires the pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 only requires "notice" pleading. Accordingly, it is not necessary that the pleader set forth each and every element or factual allegation of a claim. The "short and plain statement," however, must contain sufficient allegations of fact "that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168 (1993).

### C.    Preliminary Injunction or Temporary Restraining Order

There are four prerequisites for the extraordinary relief of preliminary injunction or temporary restraining order. A court may grant such relief only when the movant establishes that:

> (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury [to the movant] outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest.

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (*en banc*).  The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted.  *Mississippi Power and Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985); *Clark*, 812 F.2d at 993.  Otherwise stated, if a party fails to meet *any* of the four requirements, the court cannot grant the temporary restraining order or preliminary injunction.

### D.    Qualified Immunity

Government officials who perform discretionary functions are entitled to the defense of qualified immunity, which shields them from suit as well as liability for civil damages, if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A defendant official must affirmatively plead the defense of qualified immunity.  *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  The individual Defendants have pleaded this defense.

In deciding a dispositive motion that raises the defense of qualified immunity, the Supreme Court initially set forth a mandatory two-part inquiry for determining whether a government official was entitled to qualified immunity.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Under *Saucier*, a court must determine first whether the facts alleged or shown are sufficient to make out a violation of a constitutional or federal statutory right.  If the record sets forth or establishes no violation, no further inquiry is necessary.  On the other hand, if the plaintiff sufficiently pleads or establishes that a violation could be made out, the court must determine whether the right at issue was clearly established at the time of the government official's alleged misconduct.  *Id.*  The Court relaxed this

mandatory sequence in *Pearson v. Callahan*, 555 U.S. 223 (2009), and stated, "[W]hile the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory," and judges "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.   The second prong of the test "is better understood as two separate inquiries: whether the allegedly violated constitutional right[] [was] clearly established at the time of the incident; and if so, whether the conduct of the defendant[] [official] was objectively unreasonable in light of then clearly established law." *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (internal quotation marks and citations omitted); *see also Evans v. Ball*, 168 F.3d 856, 860 (5th Cir. 1999); *Hare v. City of Corinth,* 135 F.3d 320, 326 (5th Cir. 1998); *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995).

Ordinarily, one who pleads an affirmative defense must establish his entitlement to such defense.   In the context of qualified immunity, however, this burden varies from the norm.   In this circuit, the rule is as follows:

> Where . . . [a] defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff then has the burden to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.   We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.

*Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997) (internal quotations and citations omitted); *see also Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

A right is "clearly established" only when its contours are sufficiently clear that a reasonable public official would have realized or understood that his conduct violated the right in issue, not

merely that the conduct was otherwise improper. *See Anderson v. Creighton,* 483 U.S. 635, 640 (1987); *Foster v. City of Lake Jackson*, 28 F.3d 425, 429 (5th Cir. 1994). Thus, the right must not only be clearly established in an abstract sense but in a more particularized sense so that it is apparent to the official that his actions [what he is doing] are unlawful in light of pre-existing law. *Anderson v. Creighton*, 483 U.S. at 640; *Stefanoff v. Hays Cnty.*, 154 F.3d 523, 525 (5th Cir. 1998); and *Pierce v. Smith*, 117 F.3d at 871.

In *Anderson*, 483 U.S. at 641, the Court refined the qualified immunity standard and held that the relevant question is whether a reasonable officer or public official *could have believed* that his conduct was lawful in light of clearly established law and the information possessed by him. If public officials or officers of "reasonable competence could disagree [on whether the conduct is legal], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (*citing Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)). Qualified immunity is designed to protect from civil liability "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. at 341. Conversely, an official's conduct is not protected by qualified immunity if, in light of clearly established pre-existing law, it was apparent the conduct, when undertaken, would be a violation of the right at issue. *Foster*, 28 F.3d at 429. To preclude qualified immunity, it is not necessary for a plaintiff to establish that "the [specific] action in question has previously been held unlawful." *Anderson*, 483 U.S. at 640. For an official, however, to surrender qualified immunity, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Pierce v. Smith*, 117 F.3d at 882; *Stefanoff v. Hays Cnty.*, 154 F.3d at 525.

In cases involving claims of qualified immunity, it is often appropriate to require a plaintiff to file a detailed reply to address the plea of qualified immunity. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc). "[T]he reply must be tailored to the assertion of qualified immunity and fairly engage its allegations. A defendant has an incentive to plead his defense with some particularity because it has the practical effect of requiring particularity in the reply." *Id.* A plaintiff generally must be given the opportunity to reply with greater specificity in such cases before the court rules on a defendant's dispositive motion. *Todd v. Hawk*, 72 F.3d 443, 446 (5th Cir. 1996).

A reply, however, is only required when the claims in the complaint are not supported "with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts." *Schultea*, 47 F.3d at 1434. If "the pleadings on their face show an unreasonable violation of a clearly established constitutional right," assertion of a qualified immunity defense is insufficient to sustain a Rule 12(b)(6) motion to dismiss. *Shipp v. McMahon*, 234 F.3d 907, 912 (5th Cir. 2000).

### E.   Municipal Liability

A governmental entity can be sued and subjected to monetary damages and injunctive relief under 42 U.S.C. § 1983 only if its official policy or custom causes a person to be deprived of a federally protected right. *Board of the County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A governmental entity *cannot* be liable for civil rights violations under a theory of respondeat superior or vicarious liability. *Id. See also Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979). Official policy is defined as :

> 1.   A policy statement, ordinance, regulation, or decision that is officially  adopted  and  promulgated  by  the  [county]

> lawmaking officers or by an official to whom the lawmakers
> have delegated policy-making authority; or

> 2.   A persistent, widespread practice of [county] officials or
> employees which, although not authorized by officially
> adopted and promulgated policy, is so common and well-
> settled as to constitute a custom that fairly represents [county]
> policy.  Actual or constructive knowledge of such custom
> must be attributable to the governing body of the [county] or
> to an official to whom that body had delegated policy-making
> authority.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (*en banc*) (per curiam); *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (*en banc*) (per curiam), *cert. denied*, 472 U.S. 1016 (1985).  A plaintiff must identify the policy, connect the policy to the governmental entity itself and show that his injury was incurred because of the application of that specific policy.  *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984), *cert. denied*, 472 U.S. 1016 (1985).  A plaintiff must establish that the governmental entity through its deliberate conduct "was the moving force behind the injury alleged" and must establish a direct causal link between the governmental entity's action and the deprivation of a federally protected right.  *Bryan County v. Brown,* 520 U.S. at 404.

Liability must rest on official policy, meaning the governmental entity's policy, and not the policy of an individual official.  *Bennett*, 728 F.2d at 769.  The official complained of must possess

> [f]inal authority to establish [county] policy with respect to the action
> ordered. . . . The official must also be responsible for establishing
> final government policy respecting such activity before the [county]
> can be held liable. . . . [W]hether an official had final policymaking
> authority is a question of state law.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-482 (1986).  An employee, agency, or board of a governmental entity is not a policymaker unless the governmental entity, through its lawmakers, has delegated exclusive policymaking authority to that employee agency or board and *cannot* review

**Memorandum Opinion and Order - Page 11**

the action or decision of the employee, agency or board.  *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Worsham v. City of Pasadena*, 881 F.2d 1336, 1340-41 (5th Cir. 1989).

## III.    Discussion

### A.    Defendants' Motion to Strike

The court addresses this issue from the outset.  Plaintiff Igbokwe, like all Plaintiffs, is proceeding *pro se*, and he purports to represents *all* Plaintiffs.  Rule 11 of Federal Rules of Civil Procedure requires that each party proceeding *pro se* sign each pleading, motion, or other paper filed by that party; however, individuals who do not have a law license may not represent other parties in federal court even on a next friend basis.  *Weber v. Garza*, 570 F.2d 511, 514 (5th Cir. 1978); *see also Guajardo v. Luna*, 432 F.2d 1324 (5th Cir. 1970) (holding that only licensed lawyers may represent others in federal court).  Accordingly, Plaintiff Igbokwe may represent himself *pro se*, but he *may not* represent any other Plaintiff; and the court will grant Defendants' motion to strike the response filed on behalf of other Plaintiffs.

### B.    Defendants' Motion to Dismiss

After a careful reading of the pleadings and Defendants' motion for dismissal, the court is convinced that Plaintiffs' pleadings are lacking in requisite specificity regarding the claims they attempt to assert.  The court and Defendants have been generous in assuming that Plaintiffs have asserted certain claims; however, the allegations of the nine-page Petition do not meet the test to overcome a 12(b)(6) motion to dismiss or Sorrells's defense of qualified immunity.  Allegations regarding municipal liability are also deficient.  The court set forth the various standards to put Plaintiffs on notice as to what is required to state claims upon which relief can be granted and overcome the defenses asserted by Defendants.

Defendants are entitled to have Plaintiffs' Original Petition dismissed.  The court, however, will allow Plaintiffs an opportunity to replead their claims in accordance with the standards herein set forth by the court.  Even though Plaintiffs are proceeding *pro se*, they must adhere to all rules that a licensed attorney is required to follow.

### C.        Plaintiffs' Request for Injunctive Relief

As stated before, Plaintiffs must satisfy each of the elements set forth in section II (C) of this opinion.  Plaintiffs have failed to set forth evidence satisfying any of the required elements for a preliminary injunction.  Accordingly, they are not entitled to any type of injunctive relief and their motions in this regard will be denied without prejudice.

## IV.    Conclusion

For the reasons herein stated, the court **grants** Defendants' Motion to Dismiss Plaintiffs' Original Petition; **denies as moot** Defendants' Alternative Motion for a More Definite Statement; **grants** Defendants' Motion to Strike Plaintiff Obi E. Igbokwe's Response to Defendants' Motion to Dismiss on Behalf of Plaintiffs; **denies** Plaintiffs' Motion for Injunctive Relief; and **denies** Plaintiffs' Additional Motion for Injunctive Relief and Denial of Qualified Immunity for Rick Sorrells.  Plaintiffs shall replead their claims in accordance with the standards herein set forth by the court.  The court has set out detailed standards to assist Plaintiffs because they are *pro se*.  Plaintiffs **must replead their claims** by **October 19, 2012**.  Failure of Plaintiffs to replead as herein ordered will subject this action to dismissal for failure to state a claim upon which relief can be granted.

**It is so ordered** this 30th day of September, 2012.

Sam A. Lindsay
United States District Judge