IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OBI E. IGBOKWE, RICHARD BARGE, JIMMY HARRIS, GWEN JENKINS, LEBRUCE THOMAS, and SHIRLEY GRAY,<br>             Plaintiffs, | §§§§§§§§ | |
| v. | § | Civil Action No. 3:11-CV-03036-L (BK) |
| DALLAS COUNTY SCHOOLS and RICK SORRELLS,<br>             Defendants. | §§§§§§ | |

**FINDINGS, CONCLUSION and RECOMMENDATION**

Pursuant to the District Court's *Order of Reference* dated February 15, 2013 (Doc. 38), now before the Court is Defendants' *Motion to Dismiss Re-Plead of Plaintiffs' Original Petition* (Doc. 36). After considering the motion and the applicable law, it is recommended that the motion be **GRANTED**.

**BACKGROUND AND PROCEDURAL HISTORY**

Plaintiffs Obi E. Igbokwe, Richard Barge, Jimmy Harris, Gwen Jenkins, Thomas LeBruce, and Shirley Gray, who are bus drivers employed by Dallas County Schools ("DCS"), filed this *pro se* civil rights action against DCS and DCS Superintendent Rick Sorrells (collectively, "Defendants"). (Doc. 34). On September 30, 2012, the Court issued a Memorandum Opinion and Order, granting Defendants' *Motion to Dismiss Plaintiffs' Original Petition* (Doc. 6), but allowing Plaintiffs to re-plead their claims. (Doc. 33). On October 19,

2012, Plaintiffs filed their amended complaint, titled *Re-Plead Complaint with Jury Demand*, which alleges violations of their 14th Amendment rights.  (Doc. 34).

The relevant facts, as considered in the light most favorable to Plaintiffs, are as follows:

Plaintiffs bid on bus routes departing from their original service center, Don Shield Service Center in south Dallas, for the 2010 to 2011 school year; however, despite their bids and the assurance of Supervisor Rhonda Davis that they would again be assigned to Don Shield Service Center, Plaintiffs were transferred to the North Dallas Service Center – some 15 miles away.  *Id*. at 2, 4.  The transfer resulted in an additional commute, as well as financial and emotional hardship to them, due to high gas prices, stretched finances, and long hours of transit. *Id*. at 4-5.  Plaintiffs contend that the transfer was contrary to the DCS seniority system.  *Id*. at 3.

Plaintiffs' complaints to Davis, Employee Relations Manager Dale Kaiser, Transportation Director Hodge, and Defendant Sorrells were met with either silence or unfulfilled promises to transfer Plaintiffs back to their original service center.  *Id*. at 3, 6-7.  DCS temporarily provided Plaintiffs with a shuttle to their new transfer center.  *Id*. at 6.  Plaintiffs were subsequently were offered the opportunity to drive the shuttle themselves, but only at minimum wage, which was lower than the regular shuttle drivers' rate of pay.  *Id*.  Plaintiffs were eventually told there was a freeze on all employee transfers; nevertheless, four other co-workers were awarded transfers from their assigned service center.  *Id*. at 8-9.  Also, Defendants drafted an amendment to the Employee Handbook which gave DCS the right to transfer employees from a service center.  *Id*. at 3.

Plaintiff Obi Igbokwe alleges that he received a Trip Sheet with the letters "KKK" inscribed on it.  *Id*. at 7.  He further alleges that when his supervisor, David Hannah, and Kaiser

2

did not respond to his complaints about the notation, he eventually filed a "formal complaint with the local regional office of the FBI." *Id*. at 8.

Plaintiffs contend that all the complained of actions were intended to "terrorize and cowardly attempt to obstruct justice. . . [and] subjugat[e] poor blacks." *Id*. They seek damages for "emotional distress, extreme fatigue, economic hardship, lowered equality and standard of living." *Id*. at 9.

Defendants filed their motion to dismiss the amended complaint on October 31, 2012. (Doc. 36). Plaintiffs' response(s) in opposition to the motion was due on or before November 21, 2013. Subsequent to Plaintiffs' failure to timely respond, the undersigned *sua sponte* enlarged the time for filing a response to March 13, 2013. (Doc. 39). To date, however, Plaintiffs still have not responded.[1]

## APPLICABLE LAW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege enough facts to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a motion to dismiss, a court must accept all factual allegations in the complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). When considering a Rule 12(b)(6) motion, a court may consider documents outside the complaint when they are: (1) attached to the motion to dismiss; (2) referenced in the complaint; and (3) central to the plaintiff's claims. *In Re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007).

In order to overcome a Rule 12(b)(6) motion, a complaint should "contain either direct allegations on every material point necessary to sustain a recovery … or contain allegations from

---

[1] Plaintiff Ibgokwe filed a request for an additional thirty-day extension of the response deadline (Doc. 40), which was denied. (Doc. 42).

which an inference may fairly be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio,* 43 F.3d 973, 975 (5th Cir. 1995) (quotation omitted). Moreover, Rule 8, of the Federal Rules of Civil Procedure, which sets out the standard of pleading, "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A complaint, thus, is not sufficient if it merely contains "naked assertions" devoid of factual enhancement. *Id.*

## ARGUMENTS AND ANALYSIS

Defendants argue that the amended complaint fails to state a cognizable claim and should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Id*. Alternatively, Defendants move for a more definite statement of Plaintiffs' claims, under Rule 12(e). *Id.* at 2.

### Section 1983 Claims

Defendants concede, and this Court agrees, that although Plaintiffs do not specify the basis of their Fourteenth Amendment claim, their complaint can be construed to allege a violation of the Due Process and/or the Equal Protection clauses of the Fourteenth Amendment, and, thus, a cause of action under 42 U.S.C. § 1983. (Doc. 36-1 at 9).

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under section 1983, Plaintiffs must allege facts that show that (1) they have been deprived of a right secured by the Constitution and the laws of the United States, and (2) Defendants were acting under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978).

*A. Due Process Clause Violations*

Defendants argue Plaintiffs' Due Process claim fails because Plaintiffs have not pled facts which would establish that they had a continued expectation of employment or that they have a constitutionally-protected property interest in working out of a particular service center. (Doc. 36-1 at 10). Defendants further argue that the complaint amended complaint pleads no facts that can establish Defendants interfered with a fundamental right or liberty interest. *Id*.

The Due Process Clause of the Fourteenth Amendment protects against deprivations of life, liberty, or property without due process of law. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990). Construing Plaintiffs' amending complaint liberally, Plaintiffs can only be attempting to allege the deprivation of a property interest. *See* amended complaint, Doc. 34 at 2 (alleging that "sanctity of privilege of the seniority system" and the "privilege to participate in the bidding process" is protected by Section 1 of the 14th Amendment, and inferring a property interest in their election of a particular service center). In order to state a claim under section 1983, Plaintiffs must allege facts from which it can be determined that they have a constitutionally-protected property interest in the seniority system, the bidding process, or the election of a particular service center. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (procedural due process claim); *Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993) (substantive due process claim). They have not done so.

The Fourteenth Amendment's protection of property "is a safeguard of the security of interests that a person has already acquired in specific benefits." *Bd. of Regents v. Roth*, 408 U.S. 564, 576 (1972). "To have a property interest in a benefit, [Plaintiffs] clearly must have more than an abstract need or desire for it… [Plaintiffs] must, instead, have a legitimate claim of entitlement to it." *Id*. at 577. Because an individual's property interest may be created by

statute, contract, or implied contract, the Court must refer to state or local law, any existing contract, or any understandings between the parties to see whether Plaintiffs possessed a legitimate claim to a benefit. *Cabrol v. Town of Youngsville*, 106 F.3d 101, 105 (5th Cir. 1997).

Plaintiffs' amended complaint fails to allege any facts that establish a property interest in the benefits of the seniority system, participation in the route bidding process, or the election of a particular service center. (Doc. 34 at 2). Moreover, it is improbable that any such facts exist. *See, e.g., Anderson v. City of Dallas, Texas,* 3:98-CV-0793-D, 1999 WL 637223, at *2 (N.D. Tex. Aug. 19, 1999) (Fitzwater, C.J.) (holding a *pro se* plaintiff could not establish a property interest in a defendant's grievance procedures or in a prospective promotion). Generally, a plaintiff can claim a property right in continued employment based on an explicit or implied contract of employment. *Roth,* 408 U.S. at 576-77. However, that is not the issue here, as Plaintiffs have not alleged that they were deprived of continued employment with DCS.

Despite Plaintiffs' allegations that their transfer requests and complaints went unanswered, they have wholly failed to allege that were deprived of any constitutionally-protected property interest in either of the procedures or benefits upon which their claims or based. Thus, because Plaintiffs have failed to show they were deprived of a constitutionally-protected property interest without due process, their claims should be dismissed.

*B. Equal Protection Clause Violations*

Defendants argue that Plaintiffs' allegations under the Equal Protection Clause must also fail because (1) Plaintiffs have not identified fundamental rights infringed upon, and (2) Plaintiffs have failed to identify how they are were treated differently from similarly-situated individuals. (Doc. 36-1 at 12-13). Moreover, Defendants aver that of the 14 individuals

transferred to the North Dallas Service Center, several were granted transfers back to Don Shield Service Center -- including Plaintiffs Thomas LeBruce, Shirley Gray and Obi Igbokwe.[2] *Id.*

To state a claim of discrimination under the Equal Protection Clause, a plaintiff must allege that he or she was treated differently than other similarly-situated individuals and that the unequal treatment stemmed from a discriminatory purpose. *Priester v. Lowndes County*, 354 F.3d 414, 424 (5th Cir. 2004). A discriminatory purpose "implies that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001).

Liberally construed, Plaintiffs' allege disparate treatment in (1) Defendants' refusal to transfer them back to their original service center, when other employees received such a transfer; and (2) the offer to Plaintiffs of minimum wage to shuttle themselves when the original shuttle drivers were paid more. The only suggestion of a discriminatory purpose is Plaintiff Igbokwe's allegation that "KKK" written on his trip sheet. (Doc. 34 at 6-9). Additionally, Plaintiffs' aver generally that they were denied "the same freedom, liberty and privilege that every employee enjoys." *Id*. at 2.

Even under the most liberal construction, Plaintiffs fail to state a claim of disparate treatment. Not only have they not alleged that they are all members of a single, identifiable, protected group, they also have not alleged facts from which it can be gleaned that the employees who were transferred back to the Don Shield Service Center or the shuttle drivers who were allegedly paid more than Plaintiffs were offered were similarly-situated to Plaintiffs. Indeed,

---

[2] Defendants allege that Plaintiff Igbokwe refused the offered transfer back to Don Shield Service Center. (Doc. 33-1 at 13).

Plaintiffs have not rebutted Defendants' contention that several Plaintiffs were among the employees actually permitted to transfer back to their original service center.

Notwithstanding those deficiencies, the fact that the letters "KKK" were written on Plaintiff Igbokwe's trip sheet[3] in no way advances Plaintiffs' allegations that the refusal to transfer Plaintiffs back to their previous service center or the offer to pay them only minimum wage to shuttle themselves to the new transfer station was motivated by race.[4] Notably, Plaintiffs have not established any temporal connection between the employment actions about which they complain and Plaintiff Igbokwe's receipt of the trip sheet with the "KKK" notation.

The Court concludes that Plaintiffs have failed to viable Equal Protection claims; thus, those claims should be also dismissed.

*C. Municipal Liability*[5]

Defendants also contend Plaintiffs' amended complaint is completely void of factual allegations which could give rise to municipal liability under section 1983. (Doc. 36-1 at 15). Specifically, Defendants argue that Plaintiffs have not alleged injuries that are a result of a policy or practice adopted by the DCS Board of Trustees that was "deliberately indifferent" to Plaintiffs' constitutional rights. *Id*.

---

[3] A review of Plaintiff Igbokwe's trip sheet shows what appears to be the letters "KKK" discretely written in the lower right margin, in addition to three illegible markings in the upper margin. (Doc. 34 at 32). However, Plaintiff fails to allege a cause of action stemming from this writing, especially since there is no indication as to who wrote the letters. Defendants failed to address this allegation in their brief.

[4] The Court assumes, although the record is silent, that the significance of the letters "KKK" is their historically common reference to the Ku Klux Klan, and, thus, the suggestion of racial bias. That this is merely an assumption, further amplifies the deficiencies of the amended complaint.

[5] Defendant Sorrells also argues that he is entitled to qualified immunity. The Court does not consider the merits of that assertion here, where Defendants have moved for dismissal under Rule 12(b)(6) on the basis of Plaintiff's failure to meet minimum pleading requirements. Obviously, Plaintiffs are under no obligation to raise, or even address, in their amended complaint the specter of Defendant Sorrells' entitlement to qualified immunity.

Municipalities and other local government entities are "persons" within the scope of section 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). To impose section 1983 liability on a municipality, a plaintiff must show that: (1) his constitutional rights were violated; (2) the municipality had a custom or policy; and (3) the custom or policy was the moving force behind the violation. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). The unconstitutional acts complained of must be attributable directly to the municipal entity through some sort of official action or imprimatur. *Id*.

Plaintiffs have not stated a claim under which Defendant DCS can be held liable. Not only have Plaintiffs failed to allege a constitutional violation, as discussed previously herein, they have also failed to allege any custom or policy that was the moving force behind any constitutional violation. Actually, Plaintiffs seem to contend just the opposite -- that had DCS's standing custom or policy been adhered to, Plaintiffs would not have been harmed.

**Equal Pay Act Claims**

Plaintiffs contend that DCS's offer to them to shuttle themselves to the new service center for an hourly rate less than that paid to the regular shuttle drivers constitutes "unequal pay for equal work." (Doc. 34 at 6). Defendants interpret this allegation as an attempt to state a claim under the Equal Pay Act. (Doc. 36-1 at 16). Defendants aver, however, that all shuttle drivers, including Plaintiffs, were paid $7.25 per hour to drive the shuttle to the assigned service center. *Id*.

To recover under the Equal Pay Act, a plaintiff must show that (1) an employer is subject to the Act; (2) the plaintiff performed work in a position requiring equal skill, effort, and

responsibility under similar working conditions; and (3) the plaintiff was paid less than an employee of the opposite sex providing the basis of comparison." *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993) (citing 29 U.S.C. § 206(d)(1)). This "necessarily requires a plaintiff to compare [his or] her skill, effort, responsibility, and salary with a person who is or was similarly situated." *Jones v. Flagship Int'l*, 793 F.2d 714, 723 (5th Cir. 1986).

Plaintiffs have failed to allege facts that establish a violation of the Act, namely, that Plaintiffs, who are both male and female, were each paid less than a similarly-situated employee of the opposite sex. Ironically, the fact that Plaintiffs, who claim the same mistreatment, are both male and female, tends to disprove any violation of the Equal Pay Act. Accordingly, to the extent that Plaintiffs have attempted to allege an Equal Pay Act claim, it should be dismissed.

## RECOMMENDATION

In light of the foregoing, Plaintiffs' previous opportunity to amend their complaint,[6] and Plaintiffs' failure to timely respond to the motion to dismiss -- despite the *sua sponte* enlargement of the time in which to do so, it is recommended that Defendants' *Motion to Dismiss Re-Plead of Plaintiffs' Original Petition* (Doc. 36) be **GRANTED** and this case be **DISMISSED WITH PREJUDICE**.

**SIGNED** April 5, 2013.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

---

[6] "At some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986).

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE